**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DISTRICT**

| | | |
|---|---|---|
| NORMA PANTOJA, JANETH ADRIANA BARRAGAN CRUZ,<br>Plaintiffs,<br><br>v. | ) | Case No. |
| JEAN PEREZ a/k/a JEANETTE PEREZ BOLAÑOS a/k/a JEAN PEREZ DELGADO a/k/a JEAN RODRIGUEZ, JESUS ENRIQUE BOLAÑOS RANGEL a/k/a KIKE RANGER, EMILIO ESTEFFAN RODRIGUEZ, GESTORIA BOLAÑOS & ASOCIADOS, GRUPO ADUANAL LATINO, LLC,<br>Defendants. | ) | (Initial Complaint)<br>JURY DEMAND |

**COMPLAINT**

Plaintiffs Norma Oralia Pantoja and Janeth Adriana Barragan Cruz ("Plaintiffs"), by and through undersigned counsel, bring this action arising out of their respective employments, firings, and retaliations by Defendants Grupo Aduanal Latino, LLC, Gestoría Bolaños & Associates, Jeanette Perez Bolaños, Jesus Enrique Bolaños Rangel, and Emilio Esteffan Rodriguez ("Defendants"). As alleged herein, Defendants, by and through agents, employees, volunteers, and/or independent contractors, violated Plaintiffs' rights as employees under federal law, including the Fair Labor Standards Act and Tennessee state statutory. Defendants failed to pay Plaintiffs minimum wage, paid Plaintiffs no overtime wages for hours worked in excess of forty (40) hours per week, and threatened and punished Plaintiffs when they questioned and refused to engage in unlawful business practices. Defendants further retaliated by failing to pay Plaintiffs after they were fired, sending them letters baselessly threatening legal action, and other actions.

Plaintiffs respectfully submit this Complaint and allege as follows:

## I. PARTIES

1. Plaintiff Norma Oralia Pantoja is a citizen of the United States ("U.S.") and resides in Antioch, Tennessee.

2. Plaintiff Janeth Adriana Barragan Cruz is a citizen of Colombia and resides in Nashville, Tennessee.

3. Defendant Gestoría Aduanal Latino, LLC (hereinafter "GALAT") is a Tennessee entity having its principal place of business at 2723 Murfreesboro Pike Rear Antioch, Tennessee 37013. GALAT has operated in Tennessee since at least April 2016 and was registered as a limited liability company ("LLC") in Tennessee in August 2016.

4. Defendant Gestoría Bolaños & Associates (hereinafter "Gestoría Bolaños") is a Texas entity, having places of business in Texas in Georgetown, Laredo, El Paso and others. Its mailing address is PO Box 2103, Georgetown, Texas 78627.

5. Defendant Jeanette Perez Bolaños, a.k.a. "Jean Perez," "Jean Delgado," "Jeannie Perez," (hereinafter "Perez") is the principal officer and manager of the related businesses and enterprises, including Defendants Gestoría Bolaños and GALAT.

6. Defendant Jesus Enrique Bolaños Rangel, a.k.a. "Kike Ranger" and "Señor Rangel," (hereinafter "Rangel") serves as a manager of the Nashville GALAT office and is a supervisor and manager of all related businesses and enterprises. Defendant Rangel co-owns the related businesses and enterprises.

7. Defendant Emilio Esteffan Rodriguez (hereinafter "Rodriguez") is a supervisor and manager of the systems and databases and the social media of GALAT and all related businesses and enterprises. Defendant Rodriguez co-owns the related businesses and enterprises.

8. At all times relevant to this Complaint, Defendants Perez, Rangel, and Rodriguez managed the Defendant companies GALAT and Gestoría Bolaños.

9. At all times relevant to this Complaint, GALAT and Gestoría Bolaños were merely alter egos for the business and criminal enterprise operated by Defendants Perez, Rangel, and Rodriguez.

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1332; 29 U.S.C. §216(b); and 18 U.S.C. §1964(c). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 because the state law claims form part of the same case or controversy as the federal law claims.

11. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because the events that give rise to this action occurred within this district and Defendant company GALAT is incorporated and based within this district. Plaintiffs lived in and were employed by Defendants in Davidson County, Tennessee at the time the events giving rise to this Complaint occurred.

## III. FACTUAL ALLEGATIONS

12. At all times material to this Complaint, Defendant GALAT was a purported LLC based in Nashville, Tennessee, primarily offering legalization of U.S. automobile titles to Mexico. GALAT also advertises the ability to obtain Mexican driver's licenses and divorces and U.S. immigration processing, among numerous other services. GALAT operated as an unregistered entity until August 11, 2016, at which time it was registered as an LLC in Tennessee. GALAT is managed by three individuals: Defendants Perez, Rangel, and Rodriquez. On information and belief, these three individuals co-own GALAT.

13. Defendant Perez is a registered notary public in Texas. On information and belief, she owns and manages an enterprise Defendant Gestoría Bolaños in Texas. As of March 13, 2017,

Defendant Gestoría Bolaños does not appear on the Texas Secretary of State business registry. Defendant Gestoría Bolaños claims to provide the same services as Defendant GALAT, along with notary public services, licensed tax assistance services, and accounting services.

14. On information and belief, Defendants Perez, Rangel, and Rodriquez operate Defendants GALAT and Gestoría Bolaños as part of a multi-state enterprise which engages in wire fraud and defrauds customers and employees. Defendants have engaged in a scheme to fraudulently employ individuals by hiring and failing to pay them, required employees to engage in unlawful activities in their employment, and retaliated against employees who question such activities. Defendants have engaged in a scheme to defraud customers as well, including by providing fake and fraudulent services and conversion of customers' personal legal documents.

15. Plaintiff Pantoja was employed by Defendants through GALAT in Nashville, Tennessee from approximately May 18, 2016 to approximately June 2, 2016. She was hired to perform sales, marketing, and administrative work and to work as a notary public. Plaintiff Pantoja is a registered notary public in the state of Tennessee.

16. Plaintiff Barragan was employed by Defendants through GALAT in Nashville, Tennessee from approximately June 3, 2016 to approximately July 9, 2016. She was hired to perform sales, marketing, and administrative work.

17. At the time of Plaintiffs' respective hirings, Defendants told Plaintiff Pantoja and Plaintiff Barragan that they would be paid $11.00 per hour and $10.00 per hour, respectively. Plaintiff Pantoja signed a contract to that effect. Defendants knew these representations to be false at the time they were made and did not intend to honor them. Defendants made these misrepresentations to induce Plaintiff Pantoja and Plaintiff Barragan to accept Defendants' offers of employment.

18. Contrary to Defendants' representations, Defendants required Plaintiffs to work without any pay and, when questioned about pay, enforced this requirement through threats of criminal and immigration charges, mental and emotional abuse, and a pattern of mental and legal coercion.

19. During Plaintiffs' respective employments, they were required by Defendants to engage in unlawful activities as part of their employment. Defendants threatened, punished, and retaliated against Plaintiffs when Plaintiffs questioned the legitimacy of assigned tasks and activities and/or refused to engage in them. These tasks commonly related to the fake or fraudulent Mexican driver's licenses and automobile title transfers to Mexico.

20. Additionally, Defendant Perez threatened Plaintiff Pantoja with a $2.00 per hour reduction in wages if Plaintiff Pantoja refused to provide unlawful and improper notarization of documents. Defendant Perez reassured to Plaintiff Pantoja that the individuals running GALAT, had been violating the notary public duties by failing to keep a record of the notarizations, and not submitting documents to government. Plaintiff Pantoja still refused. Defendants retaliated against Plaintiff Pantoja's refusal by lowering her wage by $2.00 per hour.

21. Defendants also fraudulently entered into contracts for the business under Plaintiff Pantoja's name, making her personally liable, without asking for or receiving permission to do so. Around early June 2016, Plaintiff Pantoja was contacted by Hola Tennessee, a Spanish language newspaper in Tennessee, seeking payment for a contract in Plaintiff Pantoja's name. When Plaintiff Pantoja challenged this conduct with Defendant Perez, Defendant Perez became angry, threatened and berated Plaintiff Pantoja, and expressed that Defendants could legally use her name however they pleased.

22. When Plaintiffs questioned Defendants Perez, Rangel, and Rodriguez about the legitimacy of the services offered, their unpaid wages, and other relevant issues, Defendants

reprimanded Plaintiffs and threatened them with unlawful retaliation in their employment and in their personal lives. These threats included having Plaintiff Barragan and the husband of Plaintiff Pantoja deported. Any work rule allegedly permitting such limitations on Plaintiffs' speech is a violation of Section 7 of the National Labor Relations Act. 29 U.S.C. § 157; *Karl Knauz Motors, Inc. d/b/a Knauz BMW and Robert Becker*, 358 NLRB No. 164 (2012).

23. Threats and retaliation continued after the end of Plaintiffs' respective employment periods. These threats were made by telephone, email, text message, and other manners. They were intended, in part, to harm Plaintiffs through harassment and materially adverse action and to prevent Plaintiffs from preparing their wage and hour case against Defendants.

24. After Plaintiffs were fired, Defendants sent them fraudulent and coercive letters threatening legal action against Plaintiffs.

25. On or about June 10, 2016, Defendant Perez sent a letter to Plaintiff Pantoja on GALAT letterhead demanding that Plaintiff Pantoja pay GALAT $163.55, stating that a police report had been filed against Plaintiff Pantoja for theft, and claiming that Plaintiff Pantoja was contractually-obligated to be silent about Defendants' failure to pay Plaintiff Pantoja any of her wages. The letter included a falsified, non-existent U.S. Postal Service registered mail tracking number.

26. On or about July 26, 2016, Defendants sent by email separate letters to Plaintiff Pantoja and Plaintiff Barragan threatening legal action against them for libel and slander and demanding compensation. These letters were on letterhead of Gestoría Bolaños and were signed by Bridget Bolaños. The letters were intended to convey that Gestoría Bolaños is a law firm and that Bridget Bolaños is an attorney. On information and belief, Gestoría Bolaños is not a law firm and neither Bridget Bolaños nor any Defendant is a licensed attorney in Texas, Tennessee, or any other

relevant jurisdiction. The July 26, 2016 threat letters included falsified, non-existent U.S. Postal Service registered mail tracking information.

27. Throughout their respective employment periods, Plaintiff Barragan and Plaintiff Pantoja each logged their hours worked and submitted them to Defendants.

28. At the time that Plaintiff Pantoja was fired, she had not been paid any wages. During her employment, Plaintiff Pantoja worked 80 regular hours at $11.00 per hour and 26.5 overtime hours. Defendants should have paid her $1,317.25. Defendant assured her that she would be paid even after she was fired. However, Defendants never paid Plaintiff Pantoja any compensation for any of the hours she worked. During her employment, Defendants also required Plaintiffs Pantoja and Barragan to pay for office supplies and other expenses for Defendants' benefit out of their own pockets and did not reimburse them.

29. During Plaintiff Barragan's employment, she worked 214 regular hours at $10.00 per hour and 48 hours of overtime. Defendants should have paid her $2,860.00. Defendants paid Plaintiff Barragan just $500.00 for the hours she worked, constituting an effective hourly wage of $1.75 per hour. Defendants also retained Plaintiffs' personal documents, such as Plaintiff Barragan's passport.

30. After the end of Plaintiffs' respective employments, Defendants unlawfully retained important property owned by Plaintiffs, including Plaintiff Barragan's passport and other immigration and personal documents of Plaintiffs Barragan and Pantoja.

## IV. CLAIMS FOR RELIEF

### COUNT ONE
### FEDERAL CIVIL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") VIOLATION, 18 U.S.C. §1962(C)

31. Plaintiffs reallege and incorporate by reference Paragraphs 1-29 above and the forthcoming paragraphs as if set forth fully herein.

32. Defendant violated 18 U.S.C. §1962(c) and (d), and Plaintiffs were injured as a result.

33. Defendants Perez, Rangel, Rodriguez, Gestoría Bolaños, and GALAT each are a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. §1961(3).

34. The enterprise consisted of Defendants Perez, Rangel, Rodriguez, as well as Defendants GALAT and Gestoría Bolaños, and other entities operated by Defendant individuals and their employees.

35. This pattern of illegal activities committed by the Defendants, the "Predicate Acts," discussed above and in Paragraphs 35 through 44 below, were done with the purpose of financial gain and were done within the past ten (10) years and are continuing. By the acts alleged herein, Defendants, each and every one of them, jointly and severally, have aided and abetted and conspired to violate the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*, and other laws through their ongoing criminal enterprise as set forth below. Each of the Defendants intended to engage in the unlawful conduct with actual knowledge of the illegal activities.

36. *Pattern of Racketeering Activity*. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully, and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1), 1961(3), and 1962(c), including, but not limited to, extortion, fraud, and related activity in connection with official identification documents, wire fraud, mail fraud, employment, rental contracts, reproduction and sale of immigration documents, and fraud and misuse of customs and title documents. The racketeering activity was made possible by Defendants' regular and repeated use of the facilities and services of the enterprise. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

37. The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims, and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in approximately 2012 and continuing to the present, and there is a continued threat of repetition of such conduct.

38. Plaintiffs specifically allege that Defendants participated in the operation and management of the association-in-fact enterprise and alter-ego enterprises by overseeing and coordinating the commission of multiple acts of racketeering as described below.

39. *Predicate Act*: Use of Mails and Wires to Defraud Customers and Employees in Violation of 18 U.S.C. §§1341 and 1343. Defendants committed acts constituting indictable offenses under 18 U.S.C. §§ 1341 and 1343 in that they devised or intended to devise a scheme or artifice to defraud customers and employees or to obtain money and documents from customers and employees by means of false or fraudulent pretenses, representations, or promises. For the purpose of executing their scheme or artifice, Defendants caused the production and delivery of various fraudulent and unlawfully manipulated documents, including fraudulent identification and property title documents, by the U.S. mail or by private or commercial interstate carriers, or received directly. Defendants advertised their fraudulent services and employment online and dealt with customers and employees by phone from Texas, Mexico, and other locations. Defendants engaged in fraudulent and unlawful employment practices under 29 U.S.C. §203 and §157 in furtherance of the enterprise by means of interstate wire communication and by the U.S. mail or by private or commercial interstate carriers, or received directly. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate and foreign commerce various writings, signs, and signals. The acts of Defendants set forth above were done with

knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

40. Defendants carried out their scheme in different states and countries and could not have done so unless they used the U.S. mails or private or commercial interstate carriers or interstate wires. In furtherance of their scheme alleged herein, Defendants communicated among themselves and with Plaintiffs in furtherance of the scheme to defraud and harm Plaintiffs. These communications were typically transmitted by wire (i.e., electronically) and/or through the U.S. mails or private or commercial carriers.

41. Defendants' shared objective was and is to collect funds for fraudulent and unlawful services for their own benefit and to facilitate the fraudulent hiring and unlawful employment practices of individuals in an effort to defraud them by fraudulently using their personal information, failing to pay them for their work, and manipulating employees into assisting Defendants' scheme.

42. *Predicate Act*: Extortion in Violation of 18 U.S.C. §1951. Defendants committed acts constituting indictable offenses under 18 U.S.C. §1951. Defendants forced Plaintiffs to spend their own money and retained Plaintiffs' personal documents through threats.

43. *Predicate Act*: Travel in Furtherance of Scheme to Defraud in Violation of 18 U.S.C. § 1952. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1952 (Travel Act) in that, having devised or intended to devise a scheme or artifice to defraud Plaintiffs by means of false or fraudulent pretenses, representations, or promises, in order to get Plaintiffs to unknowingly participate in Defendants fraudulent activities, Defendants traveled between states in order to enforce their scheme, coerce and blackmail Plaintiffs into remaining employees and

staying quiet about Defendants' scheme, and to further their benefit from the scheme. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme or artifice.

44. *Continuity of Conduct.* Defendants' violations of state and federal law as set forth herein, each of which directly and proximately injured Plaintiffs, constituted a continuous course of conduct spanning a period from approximately 2012 to present, which was intended to obtain money and unpaid employment through false representations, fraud, deceit, and other improper and unlawful means. Therefore, said violations were a part of a pattern of racketeering activity under 18 U.S.C. §1961(l) and (5).

45. Upon information and belief, Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. §1962(c).

46. The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs' business and property. Plaintiffs seek an award of damages in compensation for, among other things, the Plaintiffs' harms from Defendants' refusal to return their property, such as Plaintiff Barragan's passport, the injury to Plaintiff Pantoja's reputation as a Notary Public for association with the Defendants' enterprise, Plaintiffs' fear of violent harm by Defendants,, and Defendants' refusal to pay wages to which Plaintiffs have a statutory right.

47. Plaintiffs accordingly seek an award of three times the damages they sustained, and the recovery of reasonable attorneys' fees and costs of investigation and litigation, as well as any other relief authorized by 18 U.S.C. § 1962(d).

**COUNT TWO**
**FAIR LABOR STANDARDS ACT ("FLSA") WAGE VIOLATIONS**

48. Plaintiffs reallege and incorporate by reference Paragraphs 1-45 as if set forth fully herein.

49. Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(d).

50. Defendants willfully refused to pay Plaintiffs their wages, in violation of 29 U.S.C. §206(a) and (f), and their overtime wages, in violation of 29 U.S.C. §207(a)(1) and the U.S. Department of Labor regulations. In the case of Plaintiff Pantoja, Defendants refused to pay her for any of her time worked.

51. Plaintiffs were each told that they would be paid every two weeks. Plaintiff Pantoja was to be paid $11.00 per hour. Plaintiff Barragan was to be paid $9.00 per hour. Defendants obtained the benefit of a combined total of 368.5 hours of Plaintiffs' work

52. Plaintiff Pantoja worked 80 regular hours at $11.00 per hour and 26.5 overtime hours. Defendants should have paid her $1,317.25. Defendants never paid Plaintiff Pantoja any compensation for any of the hours she worked. During her employment, Defendants also required Plaintiff Pantoja to pay for office supplies out of her own pocket and did not reimburse her.

53. Plaintiff Barragan worked 214 regular hours at $10.00 per hour and 48 hours of overtime. Defendants should have paid her $2,860.00. Defendants paid Plaintiff Barragan just $500.00 for the hours she worked, constituting an effective hourly wage of $1.75 per hour.

54. Defendants have told separately each Plaintiff Barragan and Plaintiff Pantoja that Defendants do not need to pay Plaintiffs because Plaintiffs quit or were fired. Defendants previously told Plaintiffs that they would not pay overtime wages but required that Plaintiffs work overtime hours.

55. Upon information and belief, Defendants knowingly, willfully, and intentionally violated the minimum wage and overtime provisions of the FLSA and the good faith rules in Tennessee state law.

56. Upon information and belief, Defendants failed to keep, maintain, and preserve truthful and accurate records of the hours that Plaintiffs worked and the wages paid to them.

57. Defendants violated 29 U.S.C. §206(a) by failing to pay each of the Plaintiffs the applicable minimum wage for every compensable hour of labor they performed.

58. Defendants violated 29 U.S.C. §207(a) by failing to pay the Plaintiffs at an hourly rate equal to one and a half times the regular hourly rate at which they were employed for all compensable time they were employed in excess of forty (40) hours in each workweek.

59. Defendants' failures to pay the Plaintiffs the federally-mandated hourly minimum wage and the federally-mandated overtime wage rate for all time they were employed in excess of forty (40) hours in a workweek were willful violations of the FLSA within the meaning of 29 U.S.C. §255(a). The violations of the FLSA also include the Defendants' failure to reimburse Plaintiffs Pantoja and Barragan for expenses the workers incurred which were primarily for the benefit of the Defendants.

60. As a consequence of the Defendants' violations of the FLSA, the Plaintiffs are entitled to recover their unpaid and overtime wages, plus an additional equal amount in liquidated damages, as well as reimbursement for out-of-pocket expenses, pursuant to 29 U.S.C. §216(b).

61. Specifically, Defendants' willful violations of the FLSA entitle Plaintiffs to recovery of unpaid wages, plus an equal amount as liquidated damages, reasonable attorneys' fees and costs of the action to be determined by the court, and any other damages deemed appropriate by the court, pursuant to 29 U.S.C. §216(b) and the U.S. Department of Labor regulations, in addition to declaratory relief.

## COUNT THREE
## RETALIATION UNDER THE FLSA

62. Plaintiffs reallege and incorporate by reference Paragraphs 1-59 as if set forth fully herein.

63. Defendants' retaliatory behavior towards Plaintiffs includes, but is not limited to, suspending Plaintiffs without pay, withholding wages, threatening reductions in pay, harassing Plaintiffs, firing Plaintiffs, and making comments and legal threats intended to intimidate Plaintiffs from asserting their protected rights, and constitutes retaliation in violation of 29 USC § 215(a)(3).

64. Defendants retaliated against Plaintiffs in response to their respective complaints to Defendants about not being compensated for work and overtime, questioning of the legality of Defendants' business practices, and other protected activities. In response to Plaintiffs' complaints about pay and questioning of potentially unlawful work activities, Defendants terminated Plaintiffs' respective employments. Defendants also threatened to report Plaintiff Barragan to immigration, to report Plaintiff Pantoja and Plaintiff Barragan to the police, and to report Plaintiff Pantoja's husband to immigration. Defendants may have, in fact, filed and withdrawn a police report against Plaintiff Pantoja for theft. Defendants also retaliated by sending Plaintiffs emails, texts, calls, and other messages threatening legal action and demanding compensation for fraudulently alleged harms.

65. Defendants retaliated against Plaintiff Pantoja's protected refusal to engage in unlawful conduct, such as improper document notarization, by lowering her hourly wage from $11.00 to $9.00 per hour after initially trying to coerce her into engaging in said conduct.

66. Defendants unlawfully threatened each Plaintiff with fraudulent legal demand letters from a non-existent law firm. The letters contended that Plaintiffs had committed slander, libel, and defamation by posting true statements on Facebook regarding Defendants failure to pay wages and Plaintiffs' opinions regarding Defendants' business. The letters included demands that Plaintiffs remove all related statements, cease all future statements, pay Defendants' "attorney's fees and costs," and submit an unqualified apology and retraction to Defendants. These claims are

intended to harm Plaintiffs and constitute retaliation under the FLSA, and the request for "attorney's fees and costs" constitutes extortion in violation of state and federal law. These fraudulent threat letters were intended to harass and harm Plaintiffs into relinquishing their statutory speech rights under 29 USC §157 and to punish Plaintiffs for continuing to demand their paychecks and other protected conduct.

67. Plaintiffs' complaints about not receiving wages constitute protected activity under the FLSA. Plaintiff Pantoja's refusal to engage in illegal activity and Plaintiff Pantoja's and Plaintiff Barragan's respective questioning of the legitimacy of their required work activities constitute protected activity under the FLSA.

68. Plaintiffs have experienced mental anguish and emotional distress as a result of Defendants' retaliatory conduct.

69. As a result of Defendants' unlawful and retaliatory conduct as described above, Plaintiffs suffered and continue to suffer damages. Plaintiffs seek to recover monetary damages, as well as any other legal and or equitable relief available, for losses caused by Defendants' retaliation. Specifically, Defendants' willful retaliatory conduct under the FLSA entitles Plaintiffs seek recovery of unpaid wages plus interest, plus an equal amount as liquidated damages, plus front pay. Plaintiffs seek compensatory damages for mental anguish, emotional distress, inconvenience, and nonpecuniary losses, and punitive damages, as well as reasonable attorneys' fees and costs of the action to be determined by the court.

## COUNT FOUR
## VIOLATIONS OF THE TENNESSEE PUBLIC PROTECTION ACT

70. Plaintiffs reallege and incorporate by reference Paragraphs 1-67 as if set forth fully herein.

71. At their respective periods of employment pertinent to this action, Plaintiffs were each respectively an "employee" within the meaning of the common law, T.C.A. § 50-1-304, and T.C.A. § 50-6-101 *et seq.*

72. At all times pertinent to this action, Defendants GALAT, Perez, Rangel, and Rodriguez each were an "employer" within the meaning of T.C.A. § 50-1-304.

73. The conduct described herein constitutes violations of T.C.A. §50-1-304 and §50-1-310 in that Defendants willfully terminated and unreasonably disciplined Plaintiffs in retaliation for Plaintiffs' refusal to remain silent about the unlawful business activities and employment violations committed by Defendants.

74. Plaintiffs' Complaint serves an important public policy purpose in that Defendant operates a business falsely and fraudulently creating, converting, and selling Mexican and U.S. government documents and licenses. This business is a threat to public safety by providing these fraudulent documents to unknown individuals, allowing individuals to obscure their identities, contributing to a black market of false documents, and preventing Mexican and U.S. governments from the opportunity running background checks on these individuals.

75. Plaintiffs were each terminated and unreasonably disciplined because of their refusals to take part in and remain silent about the unlawful practices by Defendants.

76. Plaintiffs seek recovery of unpaid wages plus interest, plus an equal amount as liquidated damages, plus front pay. Plaintiffs seek compensatory damages for mental anguish, emotional distress, inconvenience, and nonpecuniary losses, and punitive damages, as well as reasonable attorneys' fees and costs of the action to be determined by the court.

**COUNT FIVE**
**BREACH OF EMPLOYMENT CONTRACT**

77. Plaintiffs reallege and incorporate by reference Paragraphs 1-74 as if set forth fully herein.

78. Plaintiffs bring this action for damages resulting from Defendants' breach of contract under Tennessee law.

79. The terms and conditions provided in Plaintiffs' employment agreements set forth the terms and conditions of Plaintiffs' employment. Plaintiffs satisfactorily performed all employment duties and responsibilities required of them under the employment contracts with Defendants.

80. Defendants breached the employment contracts with Plaintiffs by compensating them at a rate below the federal minimum wage and prevailing wage for their work, by not compensating for overtime at any rate, and by failing to reimburse certain expenses incurred for the benefit of the employer.

81. Defendants' breach of the employment contracts caused Plaintiffs substantial injuries, for which they are entitled to actual and consequential damages and prejudgment interest.

**COUNT SIX**
**CONVERSION**

82. Plaintiffs reallege and incorporate by reference Paragraphs 1-79 as if set forth fully herein.

83. Upon employment, Defendants retained possession of Plaintiff Pantoja's passport and Plaintiff Barragan's passport and immigration documents, which they continue to possess unlawfully.

84. Plaintiffs demand the immediate return from Defendants of Plaintiffs' personal documents.

## V. RELIEF REQUESTED

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants, and that the court:

A. Issue declaratory judgment as determined appropriate by the court;

B. Award monetary damages as compensation for costs and harms suffered by Plaintiffs during their employment at GALAT for each Claim of Relief, to include:

i. Unpaid wages of Plaintiff Pantoja and Plaintiff Barragan of an amount no less than $1,317.25 plus interest and $2,360.00 plus interest, respectively, plus an equal amount as liquidated damages, plus front pay of no less than $18,200.00 and $14,400.00, respectively;

ii. Compensatory damages for mental anguish, emotional distress, inconvenience, and nonpecuniary losses of $50,000.00 each and punitive damages of $400,000.00;

iii. Business and reputational damages of no less than $20,000.00;

iv. Other appropriate monetary relief as determined by the court;

C. Order injunctive relief in the form of returning to Plaintiffs their possessions unlawfully kept by Defendants;

D. Award Plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and other relevant laws;

E. Award all other relief to Plaintiffs that it deems just, equitable, and proper.

Dated: April 4, 2017

Respectfully submitted,

Joel Sanderson, TN BPR No. 33521
Monarch Immigration Rights
5252 Hickory Hollow Pkwy, Suite 270A
Antioch, Tennessee 37013
Telephone: (615) 307-6472
Facsimile: (615) 577-0766
joel@mira.legal